IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GENSAVIS PHARMACEUTICALS, INC. | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No.  4:26-CV-00496-O |
| GLENN KELTOS | § § § | |
| Defendant. | § § | |

## OPINION & ORDER

Before the Court are Plaintiff's Verified Application for Temporary Restraining Order (ECF No. 1-3); Defendant's Response (ECF No. 11); and Plaintiff's Reply (ECF No. 14); Defendant's Motion to Dismiss and Appendices in Support (ECF Nos. 8, 9, 10); and Plaintiff's Response and Appendix in Support (ECF Nos. 12, 13). Having considered the Motion, briefing, and applicable law, the Court finds that Defendant's Motion to Dismiss should be **GRANTED** in part and **DENIED** in part. The Court construes Plaintiff's Application for Temporary Restraining Order as a request for a preliminary injunction and hereby **GRANTS** Plaintiff's Verified Application.

## I.    BACKGROUND[1]

Gensavis Pharmaceuticals, Inc. ("Gensavis" or "Plaintiff") is a corporation formed under the laws of the State of Texas. Defendant Glenn Keltos ("Defendant" or "Keltos") was hired by Plaintiff in exchange for thirty shares of stock in Gensavis. Keltos was subsequently terminated

---

[1] Unless otherwise noted, the Court's recitation of the undisputed facts is taken from Plaintffff's Complaint and the parties' briefing.

by Gensavis for misconduct. Prior to the filing of the instant case, Gensavis and Keltos were involved in two previous lawsuits.

### A. The First Lawsuit

In 2020, Gensavis filed a lawsuit in Texas state court alleging financial misconduct by Defendant while he was still employed by Plaintiff and while he was still a resident of Texas ("the First Lawsuit"). In that lawsuit, Keltos filed counterclaims against Gensavis relating to his wages, his ownership interest in the company, and the value of his interest in the company. During the First Lawsuit, Gensavis raised concerns with the court regarding Keltos' access to company information. Following a hearing on the matter, the court orally ruled from the bench that Keltos delete any company information and/or provide it to his attorneys. The court also instructed Keltos to provide a sworn statement verifying compliance with the court's directive and that he was not personally in possession of company information. Pursuant to the court's order and in response to Gensavis' filings on the matter, Keltos executed a Declaration and an Affidavit in December 2022, which were then filed with the court. Gensavis and Keltos ultimately entered into an agreement to buy back Keltos' thirty shares in Gensavis.

### B. The Second Lawsuit

Keltos subsequently filed his own lawsuit in 2024 for breach of contract against Gensavis and its CEO, Patrick Monsivais, alleging that they breached the parties' mediated settlement agreement stemming from the First Lawsuit ("the Second Lawsuit"). The Second Lawsuit was filed in Tarrant County, in part, due to a forum-selection clause of the contract at issue governing any breach-of-contract claims. During a one-day bench trial in the Second Lawsuit, Keltos testified that he still had the Gensavis QuickBooks on his laptop and had disclosed that QuickBooks data to a third party in a meeting in Greenville, South Carolina.

### C.  Procedural History

On March 27, 2026, Plaintiff filed its Complaint and Verified Application for Temporary Restraining Order ("TRO"). On April 22, 2026, Defendant removed the case to this Court, citing diversity jurisdiction. The Court ordered the parties to brief the pending TRO application. On May 5, 2026, Defendant filed a Motion to Dismiss for want of personal jurisdiction. The Motions and briefing are now ripe for the Court's review.

## II.    LEGAL STANDARD

### A.  In Personam Jurisdiction

A federal court may only exercise in personam jurisdiction over a nonresident if: (1) the long-arm statute of the forum state allows personal jurisdiction over the defendant and (2) the exercise of personal jurisdiction is consistent with the Fourteenth Amendment's Due Process Clause. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Because Texas's long-arm statute extends personal jurisdiction to the full extent permitted by the Due Process Clause, the only issue necessary to adjudicate is whether the exercise of personal jurisdiction over Defendant offends Due Process. *See id.* at 469-70.

Due Process is satisfied when (i) the nonresident defendant "has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state," and (ii) "the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (cleaned up).

Sufficient minimum contacts support either specific or general jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Specific jurisdiction exists when the cause of action arises out of or is related to the defendant's purposeful contacts with the forum. *See Burger King*, 471 U.S. at 472. General jurisdiction arises when the defendant has continuous and systematic contacts with the forum state, regardless of whether the cause of action arises from those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). "'Minimum contacts' may be established for a court to assert either specific jurisdiction or general jurisdiction." *Metis Intern., L.L.C. v. Ace INA Holdings, Inc.*, No. CIV.A.SA04CA-1033-XR, 2005 WL 1072587, at *2 (W.D. Tex. May 6, 2005)

In a diversity action, a plaintiff must first make a prima facie showing that personal jurisdiction exists over the defendant. *Revell*, 317 F.3d at 469. Uncontroverted allegations within the plaintiff's complaint are taken as true. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). Any genuine, material conflicts within the evidence and affidavits are resolved in the plaintiff's favor. *Id.* A district court need not "credit conclusory allegations, even if uncontroverted[,]" nor must it "draw farfetched inferences." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

### B.  Temporary Restraining Order

The decision to grant or deny injunctive relief is committed to a district court's discretion. *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985). The purpose of a temporary restraining order ("TRO") is "to preserve the status quo until there is an opportunity to hold a hearing." 11A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2951 (3d ed. 2005). "A TRO is simply a highly accelerated and temporary form of preliminary injunctive relief, which requires that the party seeking such relief establish the same four elements

for obtaining a preliminary injunction." *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) (internal quotation marks and citation omitted).

The Fifth Circuit set out the requirements for a preliminary injunction in *Canal Authority of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). To prevail on a preliminary injunction, the movant must show: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that granting the injunction is not adverse to the public interest. *Id.*; *see also Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

### III.    ANALYSIS

### A.  Defendant's Motion to Dismiss

Defendant argues that Plaintiff has not alleged sufficient facts to support either general or specific personal jurisdiction. Plaintiff responds that Defendant's purposeful availment of Texas state courts to litigate previous disputes, combined with the Defendant being a former treasurer, shareholder, and fiduciary of a Texas corporation and possessing confidential and proprietary trade secrets is sufficient to satisfy the minimum-contacts test.[2] The Court finds that it has specific jurisdiction over Defendant for the majority of Plaintiff's claims.

### 1.  Plaintiff's Non-Fraud Claims

Specific jurisdiction is appropriate when "the defendant has 'purposefully directed' his activities at residents of the forum" and the plaintiff's claim against the non-resident defendant arises out of or relates to those activities. *Clemens*, 615 F.3d at 378–79; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction must arise from a clearly

---

[2] Resp. Mot. Dismiss 5–7, ECF No. 12.

defined nexus between Defendant's contacts and the causes of action for the alleged violations of the Texas Uniform Trade Secrets Act ("TUTSA") and Texas Theft Liability Act ("TTLA"), and conversion, such that the contacts form the basis of the suit. *See McNamee*, 615 F.3d at 378– 79. In this case, all of Plaintiff's causes of action revolve around Defendant's continued possession of Plaintiff's data. Accordingly, the Court focuses its analysis on the relationship between Defendant's continued possession of Plaintiff's data, Defendant's connections to Texas, and Plaintiff's causes of action. *See Info. Servs. Grp., Inc. v. Rawlinson*, 302 S.W.3d 392, 398 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("Specific jurisdiction is established if the defendant's alleged liability arises out of or is related to an activity conducted within the forum.").

Here, Defendant's possession of Plaintiff's data arises out of his purposeful employment in Texas. Defendant worked and resided in Texas until 2019.[3] It was only after he was terminated that he moved to Florida.[4] Taking Plaintiff's allegations as true, Defendant has had continuous, unauthorized access to Plaintiff's confidential data since 2019. That is, Defendant's alleged misappropriation of Plaintiff's trade secrets began when Defendant was terminated. Therefore, at least part of Defendant's tortious conduct accrued in Texas and was directed at a Texas resident. *See Allchem Performance Products, L.P. v. Frey*, No. 3:07-CV-1696-M, 2008 WL 1848461 (N.D. Tex. Apr. 21, 2008) (holding that a nonresident defendant's use of misappropriated trade secrets during a visit to Texas was sufficient to establish "minimum contacts" for specific jurisdiction). Accordingly, Plaintiff has sufficiently alleged causes of action arising under TUTSA, TTLA, and for conversion by alleging that Defendant purposefully directed his activities at Texas and that these causes of action arise out of Defendant's activities. *See Alpine View*, 205 F.3d at 215; *see*

---

[3] Appx. Supp. Mot. Dismiss, Ex. A (Keltos Declaration) ¶ 3, ECF No. 10-1.
[4] *Id.*; Pl.'s Reply Supp. TRO 1, ECF No. 14.

*also Lewis v. Fresne*, 252 F.3d 352, 358–59 (5th Cir. 2001) ("A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted.").[5]

2.  Plaintiff's Fraud Claim

As for fraud, Defendant argues that Plaintiff's claim is not actionable because the Texas litigation privilege shields any "communications" made in judicial proceedings from constituting the basis of a civil action.[6] Plaintiff asserts in response that the litigation privilege applies only to claims for libel and slander.[7] In support of his argument, Defendant cites to *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988 (5th Cir. 1999). The Fifth Circuit in *Shanks* explicitly stated that it would leave it "for the district court to determine on remand whether absolute immunity applies" to non-defamation claims. *Shanks*, 169 F.3d at n.8. On remand, the district court held that where a cause of action "exists independently of the privilege communications, the plaintiff is not precluded from asserting its claim . . . [but] where the plaintiff's claim arises from the privileged communications, that claim is barred." *Order Granting Summary Judgment*, ECF No. 94 at 6, *Shanks v. AlliedSignal, Inc.*, 4:94-cv-01906 (S.D. Tex. Aug. 3, 2000), *aff'd Shanks v. Alliedsignal, Inc.*, 268 F.3d 1063 (5th Cir. 2001). The Court agrees.

Here, Plaintiff's claim for fraud is based on Keltos's initial affidavit and subsequent contradictory testimony, both of which were made in judicial proceedings and fall within the definition of the privilege. *See James v. Brown*, 637 S.W.2d 914, 916–17 (Tex. 1982) ("This privilege extends to any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial

---

[5] The Court finds that venue is proper in this Court for the same reasons that it has specific jurisdiction over Defendant. Accordingly, Defendant's request for dismissal under Rule 12(b)(3) and 28 U.S.C. §1406(a) is DENIED. Furthermore, because the Court has determined it does have jurisdiction to hear the majority of Plaintiff's claims, Defendant's Motion to Transfer is also DENIED.

[6] Mot. Dismiss 8, ECF No. 8 (quoting *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 992 (5th Cir. 1999)).

[7] Resp. Mot. Dismiss 8, ECF No. 12.

hearings, depositions, affidavits and any of the pleadings or other papers in the case."); *see also Reagan v. Guardian Life Ins.*, 140 Tex. 105, 166 S.W.2d 909, 912 (Tex. 1942) ("The falsity of the statement or the malice of the utterer is immaterial."). Because the communications that form the basis of Plaintiff's fraud claim were made in the context of litigation and can not be independently asserted, the litigation privilege applies. Without being able to rely on Defendant's in court statements as the basis for a cause of action in fraud, Plaintiff has failed to show the necessary nexus between Defendant's alleged misconduct and Texas. Thus, the Court lacks specific personal jurisdiction over Defendant.[8] *See Shell Oil Co. v. Writt*, 464 S.W.3d 650 (Tex. 2015) ("While abuse of the absolute privilege is possible, it is limited because the speaker will generally still be subject to the risk of criminal prosecution for perjury or obstruction of justice."). Accordingly, Plaintiff's fraud claims are **DISMISSED** without prejudice for lack of specific personal jurisdiction.

## B. Plaintiff's TRO Application

Having satisfied itself that it has jurisdiction to hear the bulk of Plaintiff's claims, the Court turns to Plaintiff's TRO application. Because Plaintiff is clearly seeking injunctive relief that extends beyond the fourteen-day period, the Court construes Plaintiff's request as a motion for preliminary injunction. *See Garcia v. Glenn*, No. 2:17-CV-164-Z, 2020 WL 999829 (N.D. Tex. Mar. 2, 2020), *aff'd*, 839 Fed. Appx. 927 (5th Cir. 2021). First, Plaintiff has shown a likelihood of success on the merits. At bottom, Plaintiff alleges that Defendant has misappropriated Plaintiff's sensitive data.[9] As Plaintiff alleges, Defendant admitted in open court that he has accessed and shown Plaintiff's data to a third-party, despite having been terminated from Gensavis since 2019.

---

[8] The Court also lacks general personal jurisdiction over Defendant because Plaintiff has not sufficiently pleaded that Defendant's contacts with Texas were anything other than the unilateral activity of another party. *Carmona v. Leo Ship Mgmt.*, 924 F.3d 190, 193–94 (5th Cir. 2019).
[9] TRO Application 5–6, ECF No. 1-3.

Such a blatant admission weighs strongly in Plaintiff's favor and has shows that Plaintiff has a strong likelihood of success on either its TUTSA, TTLA, or conversion claims.

Second, Plaintiff has also shown a substantial threat of irreparable harm. "An irreparable injury is one that cannot be undone by monetary damages or one for which monetary damages would be "especially difficult to calculate.'" *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 (5th Cir. 2013) (citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991)). In diversity cases, the Court applies Texas law to determine whether a potential injury would be irreparable. *Kula*, 542 F. App'x at 335. As one Texas court has said, "[t]he threatened disclosure of trade secrets constitutes irreparable injury as a matter of law." *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App.—Fort Worth 2005, no pet.). Here, Defendant's continued possession of Plaintiff's data poses such a threat. Accordingly, the Court finds that Plaintiff has adequately demonstrated a substantial threat of irreparable harm posed by Defendant's potential disclosure of trade secrets.

Third, the balance of hardships weighs in Plaintiff's favor. Plaintiff seeks narrowly tailored relief designed to protect its legitimate business interests and to ensure misappropriated information cannot be further misused. Defendant will suffer no undue hardship, as he merely needs to comply with his obligations not to disclose Plaintiff's confidential information and to comply with trade secret law. *See MMR Constructors, Inc. v. JB Group of LA, LLC*, No. CV 22-00267-BAJ-RLB, 2022 WL 1223919, at *6 (M.D. La. Apr. 26, 2022).

Finally, enjoining Defendant from using Plaintiff's sensitive data will not disserve the public interest. Depriving Defendant of the allegedly misappropriated trade secrets serves the public interest by furthering the purposes of TUTSA. *See Direct Biologics, LLC v. McQueen*, No. 1:22-CV-381-SH, 2022 WL 1409984 (W.D. Tex. May 4, 2022).

## IV.   CONCLUSION

For the forgoing reasons it is **ORDERED** that Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Plaintiff's fraud claim is **DISMISSED without prejudice** for want of personal jurisdiction.

**IT IS FURTHER ORDERED** that Defendant Glenn Keltos is **ENJOINED** from the following actions:

1.   Possession or unauthorized use or display of Gensavis Pharmaceuticals, Inc.'s QuickBooks;

2.   Using, displaying, dissemination any confidential data, including the Chase Bank banking records belonging to Gensavis Pharmaceuticals, Inc.; and

3.   Making back-up copies or disseminating copies of Gensavis Pharmaceuticals, Inc.'s QuickBooks or confidential data to himself or others.

4.   All other relief sought by Plaintiff not expressly granted is **DENIED**.

**SO ORDERED** on this **26th day** of **May, 2026.**

_____
Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**